UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **BRYAN K. OWEN**, | Case No. 3:08-CV-06208-KI |
| Plaintiff, | |
| | OPINION AND ORDER |
| v. | |
| **COMMISSIONER of Social Security**, | |
| Defendant. | |

Alan Stuart Graf, P.C.
316 Second Rd.
Summertown, Tennessee  38483

    Attorney for Plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

      Adrian L. Brown
      Assistant United States Attorney
      1000 SW Third Avenue, Suite 600
      Portland, Oregon  97201-2902

      David J. Burdett
      Special Assistant United States Attorney
      Office of the General Counsel
      Social Security Administration
      701 Fifth Avenue, Suite 2900 M/S 221A
      Seattle, Washington  98104-7075

          Attorneys for Defendant

KING, Judge:

      Plaintiff Bryan Owen brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff further disability benefits because he had medically improved and was no longer disabled.  I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

      The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

      The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a seven-step sequential evaluation process for determining if an individual's disability has ceased. The review will cease and benefits will continue at any point the Commissioner determines that the individual remains unable to engage in substantial gainful activity. The steps are: (1) whether the individual has an impairment which meets or equals the severity of a listed impairment; (2) whether there has been medical improvement; (3) whether the medical improvement is related to the ability to work; (4) if there has been no medical improvement, or if the medical improvement is not related to the ability to work, whether an exception to the medical improvement standards apply; (5) whether the individual has a severe impairment or combination of impairments; (6) whether the individual can do past relevant work; and (7) whether the individual can perform other work in the national economy in light of his age, education, and work experience. 20 C.F.R. § 416.994(b)(5).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

Page 3 - OPINION AND ORDER

than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. Id.

## PROCEDURAL BACKGROUND

The Commissioner found Owen disabled on February 1, 1998. When he reached 18 years old, a redetermination found he was still disabled as of November 1999,[1] the comparison point date in the analysis below. The Commissioner found Owen had medically improved as of April 1, 2004. Owen appealed, and the Disability Officer found Owen was no longer disabled. Owen appealed again, and ALJ Atkins affirmed the denial of benefits. Owen appealed ALJ Atkins' decision to the Appeals Council, and then to this court.

On February 3, 2009, I remanded the case to allow the Commissioner to find a missing exhibit. On July 29, 2009, the Appeals Council remanded for further proceedings. ALJ Hein held a hearing on July 28, 2010 and issued an unfavorable decision. Owen appealed, the Appeals Council found no reason to assume jurisdiction, and Owen returned to federal court to appeal ALJ Hein's decision.

## THE ALJ'S DECISION

ALJ Hein noted Owen was disabled due to severe impairments of a learning disorder and exostosis[2] at the time of the comparison point date in November 1999. At that time, Owen was

---

[1] There is some confusion in the records about the precise comparison point date. All records are within a few days of each other, and any difference does not affect the analysis. I will refer to it generally as November 1999.

[2] "[A] spur or bony outgrowth from a bone or the root of a tooth[.]" Merriam Webster's Medical Desk Dictionary 262 (1986).

Page 4 - OPINION AND ORDER

limited to simple and routine tasks at a light exertional level, had limited persistence and limited ability to sustain productive effort, required special supervision to keep on task, and could not sustain productive effort throughout a normal workday/workweek on a consistent basis. The ALJ found Owen had nonsevere impairments of depression, bipolar disorder, and post-traumatic stress disorders but that he had not developed any additional impairments between the comparison point date and April 1, 2004. The ALJ also found that since April 1, 2004, these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ found Owen had a medical improvement as of April 1, 2004 and at that time had the residual functional capacity to perform light work if he avoided concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. Based on the revised residual functional capacity and vocational expert testimony, the ALJ concluded Owen could work as an assembler of printed products, price marker, or small parts salvager and, thus, was not disabled under the Act.

## FACTS

Owen was 29 years old at the time of ALJ Hein's decision. He attended high school special education classes sporadically and earned a certificate of attainment, but his school work was at the third or fourth grade level and his motivation to complete tasks was minimal. Owen has no work experience. He could not make small purchases without supervision until he was in his twenties, but he can take the bus around town without getting lost. Owen spends time watching television, playing video games, participating in a medieval live role-playing group, using the computer, train watching, bird watching, and helping out around the family home. He

stopped singing in the church choir because of pain in his back and leg, and the pain has limited the amount of time Owen can take part in the role-playing group.

The exostosis caused multiple tumors in various parts of Owen's body which cause him pain. Owen has a hereditary form of the illness, which is not curable. He had six surgeries from 1987 to 1997 to remove tumors in his legs, arms, and ribs, a surgery in 2004 on his hand, and a surgery in 2008 on his leg. He complains of continuous pain throughout all his joints which he treats with over-the-counter analgesics. Cold weather increases the pain. To control the pain, Owen lies on the floor with his feet up against the wall for twenty to forty minutes about six times a day. He claims the pain from the exostosis has gotten worse over the years and has affected the length of time he can stand, sit, walk, or grip anything in his hands.

Mentally, Owen explains he has difficulty with people who give him orders or point out mistakes. He becomes angry and throws objects three or four times a week and becomes verbally aggressive five times a week. Owen saw a counselor from August 2007 through September 2009 for his anger issues, and only stopped when he lost insurance coverage for the counseling. Owen tests at the low average intelligence level. He could not focus on the written driving test long enough to obtain a learner's permit.

## DISCUSSION

I.    ALJ Finding #2

Finding #2 states:

> At the time of the [comparison point date], the claimant had the following medically determinable impairments: asthma and osteochondroma (exostosis). These impairments were found to result in the residual functional capacity to perform a full range of light work except that he should avoid concentrated

    exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory
    irritants.

Tr. 19.

  Owen contends this finding is nonsensical and unsupported by the record.  The SSA form which continued Owen's disability benefits, dated November 8, 1999–the comparison point date–states the primary diagnosis is a learning disorder and the secondary diagnosis is multiple congenital exostosis.  Tr. 40.  Owen argues the ALJ must compare the original primary diagnosis–a learning disorder–with Owen's later conditions and limitations.

  The Commissioner does not address this point in his brief.  After reviewing the record, I agree with Owen that the ALJ incorrectly stated Owen's impairments at the time of the comparison point date in November 1999.  The ALJ cannot analyze whether there has been medical improvement in Owen's impairments if the ALJ does not consider the correct set of impairments which existed at the time of the comparison point date.  Owen's primary diagnosis at the time of the comparison point date, a learning disorder, fell off the table somehow in the ALJ's analysis.  This alone is reason enough for a remand so the ALJ can properly address the seven-step sequential evaluation process.

II.  <u>ALJ Finding #5</u>

  Finding #5 states:  "Medical improvement occurred as of April 1, 2004."  Tr. 19.  The ALJ relied on a November 2004 psychological evaluation performed by Dr. Robert Kruger, Psy.D., which found Owen's "attention, ability, and capability of sustaining attention on brief, basic, repetitive tasks was 'fair[,]'" and Owen could "capably complete tasks adequately within an appropriate amount of time."  <u>Id.</u>  The ALJ noted Dr. Kruger did not make an Axis I or II

diagnosis. The ALJ also noted medical evidence showing Owen's asthma was well-controlled with medication.

Owen objects to the ALJ finding medical improvement as of April 1, 2004 based on an evaluation performed in November 2004, seven months later. I agree with this objection. Even if Dr. Kruger's November 2004 assessment supported a conclusion that Owen had a medical improvement, I see nothing in the ALJ's decision explaining why he placed the time of the improvement seven months before the evaluation.

Owen interprets Dr. Kruger's psychological evaluations as showing his ability to pay attention decreased over time and his ability to complete tasks remained the same. Thus, Owen argues there was no medical improvement.

In addition to Dr. Kruger's November 2004 evaluation, the Commissioner argues the ALJ's reliance on Dr. Robert Henry's December 2007 opinion and Owen's wide-ranging activities are sufficient support for the ALJ's conclusion that Owen had a medical improvement.

The ALJ gave great weight to Dr. Henry's December 2007 opinion, provided in a Psychiatric Review Technique form. Based on his review of the medical record, Dr. Henry checked a single box on the form to indicate Owen had "No Medically Determinable Impairment" and provided no other information or analysis of the record. Tr. 446-59. A doctor's report completely unsupported by analysis is entitled to less weight  See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ can reject check-off reports from physicians that do not contain any explanation of the bases for the conclusions). There is no substantial evidence on which the ALJ could base his decision to give Dr. Henry's opinion great weight, particularly

when Dr. Henry completed the form over three years after the ALJ concluded Owen had a medical improvement.

I also am concerned about the ALJ's reasoning that Owen's wide-ranging activities indicate he had a medical improvement. Owen testified to significantly curtailing or ending his choir singing, his role-playing, and his attendance at car shows. I realize the ALJ found Owen less than credible, and Owen did not appeal this part of the decision. In contrast to subjective complaints of pain, however, the amount of time Owen participates in activities other than watching television and playing video games could be corroborated, or not, by his parents. I interpret the record as a reduction in activities. Thus, this part of the ALJ's analysis is not supported by substantial evidence.

One problem repeated numerous times in Owen's academic records provided in the medical record is that Owen could not stay on task for even five minutes without supervision. Turning to Dr. Kruger's opinions, he concluded in September 1999, two months before the comparison point date, that Owen's "overall attention ability and capability of sustaining his attention for an appropriate period of time were seen as fair, such that initially he would complete tasks slowly, but with repetition he would be able to adequately complete brief, basic, repetitive, one or two-stage tasks that were overlearned." Tr. 397. Dr. Kruger gave Axis I diagnoses of mathematics disorder and reading disorder.

In November 2004, Dr. Kruger re-examined Owen but gave no Axis I diagnosis. He stated, "Owen's overall attention ability and capability of sustaining his attention on brief, basic, routine, repetitive tasks were seen as fair, such that he would be able to complete those tasks adequately, within an appropriate period of time." That does not strike me as a medical

Page 9 - OPINION AND ORDER

improvement. I realize I have focused on a single piece of information in multi-page report, but I ask the ALJ to consider carefully on remand whether the reports support a conclusion that Owen had a medical improvement.

Owen also contends the ALJ erred in not mentioning his exostosis, which Owen claims worsened over the years, in Finding #5. In particular, Owen argues the ALJ did not appropriately reject the opinion of his treating physician, Dr. Mark Fogelsong.

The Commissioner concedes the ALJ did not refute Dr. Fogelsong's opinion, but argues the opinion simply confirms Owen suffers from osteochondroma and does not address the vocational impact of the impairment. Thus, the Commissioner claims Dr. Fogelsong's opinion does not compel a finding of disability.

Owen had two surgeries for the exostosis after the date the ALJ found the medical improvement. On remand, I ask the ALJ to inquire further of Dr. Fogelsong as to the state of Owen's physical condition.

III.     Conclusion

Once the Commissioner finds a claimant to be disabled, a presumption of continuing disability arises in the claimant's favor. Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007). The Commissioner did not meet his burden here of overcoming the presumption. Consequently, I remand the case for further proceedings.

///


///

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this _____19th_____ day of March, 2013.

                                           /s/ Garr M. King
                                          Garr M. King
                                            United States District Judge